## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KRISTEN GOODMAN DOPF, | |
| Plaintiff, | |
| v. | Civil Action No. 25-797-GBW |
| STEPHEN JOHN JANKOVIC, | |
| Defendant. | |

## MEMORANDUM OPINION

January 7, 2026
Wilmington, Delaware

 

 

_____
GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Plaintiff Kristen Goodman Dopf's ("Plaintiff") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendant Stephen John Jankovic ("Defendant"). D.I. 7. For the reasons below, the Court denies Plaintiff's Motion for Default Judgment.

## I.   BACKGROUND[1]

Plaintiff was employed by Total Wellness Medical Center, LLC ("TWM"), as a physician's assistant, from April 18, 2022 to June 28, 2022. D.I. 1 ¶ 10. TWM is "an integrative medicine clinic, offering services that include, but are not limited to, Chiropractic, Regenerative Therapy, Physical Therapy, Massage Therapy, and Nutritional Evaluation," located in Wilmington, Delaware. *Id.* ¶ 16. Defendant, a chiropractor, is the sole owner of TWM. *Id.* ¶¶ 16, 17.

In May 2022, Defendant, in his capacity as owner of TWM, began submitting claims to insurance companies for services purportedly rendered by Plaintiff to patients, although Plaintiff did not personally perform the services or see the patients. *Id.* ¶ 21. Once aware, Plaintiff told Defendant she would not sign orders for patients she had not seen. *Id.* ¶ 22. However, Defendant continued to submit fraudulent claims by creating a stamp with Plaintiff's signature. *Id.* ¶¶ 23, 24. On June 13, 2022, Plaintiff again told Defendant that she could not bill for procedures she had not ordered and for patients she had not seen. *Id.* ¶ 27. A few weeks later, on June 28, 2022, Defendant terminated Plaintiff's employment citing financial reasons. *Id.* ¶ 39.

_____

[1] In assessing a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Genedics, LLC v. Meta Co.*, No. 17-1062, 2019 WL 3802650, at *3 (D. Del. Aug. 13, 2019) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

On October 27, 2022, Plaintiff sued TWM in Delaware Superior Court (the "State Court Action") alleging causes of actions under the Delaware WhistleBlowers' Protection Act, 17 Del. C. § 1701, breach of contract and breach of covenant of good faith and fair dealing. *See* D.I. 8-1. The parties engaged in discovery and motion practice in preparation for a jury trial scheduled in September 2024. *See* D.I. 8-11. On July 17, 2024, the Delaware Superior Court entered an Order granting TWM's motion to withdraw counsel. *See* D.I. 8-10. TWM failed to retain new counsel, which ultimately led to Plaintiff filing a motion for default judgment on September 11, 2024. *See* D.I. 8-13; D.I. 8-26. On September 17, 2024, the Delaware Superior Court granted Plaintiff's motion for default and referred the case to a Superior Court commissioner to determine Plaintiff's damages. *See* D.I. 8-12. On December 17, 2024, an inquisition hearing was held to determine the amount of damages to be awarded. *See* D.I. 8-15. The next day, by Order, the Delaware Superior Court awarded damages in favor of Plaintiff in the amount of $375,000, plus post-judgment interest and costs. D.I. 8-2. On February 18, 2024, Plaintiff filed a motion for attorney's fees under the Delaware Whistleblowers' Protection Act. *Id.* A hearing for the motion was held on April 11, 2025. On the same day, the Delaware Superior Court awarded attorney fees and costs to Plaintiff in the amount of $300,000. *Id.* In sum, a judgment was awarded to Plaintiff against TWM for a total amount of $675,000, plus post-judgment interest. *Id.*

## II.    PROCEDURAL HISTORY

On June 27, 2025, Plaintiff filed her Complaint in this action against Defendant, in his capacity as owner of TWM, again alleging causes of actions under the Delaware WhistleBlowers' Protection Act, 17 Del. C. § 1701, breach of contract and breach of covenant of good faith and fair dealing. D.I. 1. Plaintiff properly effectuated service on September 9, 2025. D.I. 4. Defendant's answer was due on September 30, 2025. *Id.* Defendant did not file an answer. Plaintiff requested

entry of default on October 6, 2025, which the clerk entered on October 10, 2025, and filed her motion for default judgment on October 22, 2025.  D.I. 5; D.I. 6; D.I. 7.

## III.    LEGAL STANDARDS

### A.    Default Judgment

Default judgments are generally disfavored in the Third Circuit.  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008).  Entry of default judgment is a two-step process.  *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010).  First, a party seeking a default judgment must request that the Clerk of Court enter default against the party that has failed to respond or otherwise defend itself in the action.  *See* Fed. R. Civ. P. 55(a).  Thereafter, with the filing of a motion for default judgment, "the entry of a default judgment is left primarily to the discretion of the district court," but "discretion is not without limits," and the preference is for cases to "be disposed of on the merits whenever practicable."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984).  Therefore, even when the defendant is properly in default, the plaintiff is not entitled to the entry of default judgment as of right.  *Cohran v. Revenue Collect CRA Collections*, No. 12-82, 2013 WL 1632681, at *2 (D. Del. Apr. 16, 2013) (cleaned up).

Rather, factual allegations in the complaint "must establish a legitimate cause of action before default judgment can be entered."  *Id.* at *3.  Moreover, courts consider three factors to determine if default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  In assessing these factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Genedics, LLC v. Meta Co.*, No. 17-1062, 2019 WL 3802650, at *3 (D. Del. Aug. 13, 2019) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

### B.    Piercing the Corporate Veil

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011). The question of corporate veil-piercing is one of substantive law, therefore, state law applies. *See Empower Brands LLC v. Tristar Prods., Inc.*, No. 23-01225, 2024 WL 5090532, at *3 (D. Del. Dec. 12, 2024).

"Delaware courts will respect corporate formalities, absent a basis to 'pierce the corporate veil.' . . . One such basis is where a subsidiary is in fact a mere instrumentality or alter ego of its owner." *Microsoft Corp. v. Amphus, Inc.*, No. 8092, 2013 WL 5899003, at *6 (Del. Ch. Oct. 31, 2013). "The alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual *owner* who controls the [company]." *In re Opus E., L.L.C.*, 480 B.R. 561, 570 (Bankr. D. Del. 2012).

"[I]n order to state a claim for piercing the corporate veil under an alter ego theory, [Plaintiff] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008); *see also Theravectys SA v. Immune Design Corp.*, No. 9950, 2014 WL 5500506, at *2 (Del. Ch. Oct. 31, 2014) ("The alter ego doctrine typically only applies when the use of the corporate form in and of itself operates to serve some fraud or injustice.") (internal citations omitted). "Conclusory allegations of alter ego status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." *Arnold v. X Corp.*, No. 23-00528, 2025 WL 2769484, at *5 (D. Del. Sept. 29, 2025).

## IV.    DISCUSSION

### A.    Plaintiff Properly Requested Default

Plaintiff filed her complaint on June 27, 2025 and properly served Defendant on September 9, 2025. D.I. 1; D.I. 4. Defendant's answer was due by September 30, 2025. D.I. 4. However,

Defendant failed to respond and has not filed any document in this matter to date. Accordingly, Plaintiff properly requested that the Clerk of Court enter default against Defendant. D.I. 5. Therefore, Plaintiff has satisfied step one of the default judgment process pursuant to Fed. R. Civ. P. 55(a).

### B.    Plaintiff Fails to Demonstrate a Legitimate Cause of Action

Next, the Court must determine whether Plaintiff's allegations demonstrate a legitimate cause of action. *See Seed River, LLC v. AON3D, Inc.*, No. 21-1497-GBW, 2023 WL 1778630, at *2 (D. Del. Feb. 6, 2023). After reviewing the complaint and its accompanying exhibits, Plaintiff has raised the same claims regarding the Delaware Whistleblowers' Protection Act, 17 Del. C. § 1701, breach of contract and breach of the covenant of good faith and fair dealing, as she did in the State Court Action. *See Kristen Goodman Dopf v. Total Wellness Medical Centre, LLC*, No. N22C-10-646 CEB (Del. Super. Ct. Oct. 27, 2022). The sole difference between the complaint in this action and the complaint in the State Court Action is that Plaintiff now sues Defendant, the owner of TWM, in his individual capacity, claiming that TWM is the alter ego of Defendant. D.I. 1 ¶ 74. In the State Court Action, Plaintiff was awarded a default judgment against TWM in the amount of $675,000. D.I. 8 at 1. Plaintiff alleges that, as of the date of Plaintiff's motion, the judgment remains unpaid. *Id.* In this action, Plaintiff seeks to pierce the corporate veil of TWM and to hold Defendant liable for the judgment against TWM.

### 1.    Plaintiff Fails to Pierce the Corporate Veil

For Plaintiff to state a claim for piercing the corporate veil under an alter ego theory, she must sufficiently allege that TWM and Plaintiff operated as a single economic entity and an overall injustice or unfairness exists. *See Trevino*, 583 F. Supp. 2d at 528. To assess the first element, whether a single economic entity exists, courts evaluate the following factors: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent;

(3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." *Empower Brands LLC*, 2024 WL 5090532 at *3. "While no single factor justifies a decision to disregard the corporate entity, some combination of the above is required, and an overall element of injustice or unfairness must always be present, as well." *Trevino*, 583 F. Supp. 2d at 529.

In this action, Plaintiff's complaint contains only conclusory allegations. *See* D.I. 1 ¶¶ 75 ("Defendant did not adequately capitalize TWM for the undertaking of paying Plaintiff the annual salary of $125,000 under her three year contract."); 76 ("TWM was solvent"); 77 ("Upon information and belief, TWM did not observe all corporate formalities or all requisite formalities for Delaware LLC"); 80 ("Defendant Jankovic siphoned TWM's funds"); 81 ("TWM simply functioned as a façade for Defendant Jankovic."). Plaintiff's allegations are nothing more than rote recitations of the relevant factors and, absent any additional supporting factual allegations, which Plaintiff's motion plainly lacks, fail to establish the existence of a single economic entity. *See Arnold v. X Corp.*, No. 23-00528, 2025 WL 2769484, at *5 (D. Del. Sept. 29, 2025) ("Conclusory allegations of alter ego status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements.").

With respect to the second element, the presence of an overall element of injustice or unfairness, "Delaware law requires that the fraud or injustice be found in the *defendant's use of the corporate form itself.*" *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 620 (D. Del. 2018) ("[W]hile any party that brings a legal claim (e.g., for breach of contract, or in tort) against a purported alter ego company can assert that an 'injustice' is being done to them (e.g., based on the facts that give rise to their claim for breach of contract, or their tort claim), that is not the kind of

'injustice' that is relevant."). Again, Plaintiff offers only conclusory allegations, such as "[t]he corporate form or the LLC form was used to perpetuate a fraud or similar injustice. Specifically, Defendant Jankovic used TWM to perpetuate insurance fraud or to falsify business records." D.I. 1 ¶ 82; D.I. 8 at 11.

Plaintiff's allegations that Defendant engaged in insurance fraud, standing alone, are insufficient to satisfy the second element of corporate veil piercing. The second element requires a showing that the use of the corporate form of TWM itself was fraudulent. *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, No. 3184-VCP, 2008 WL 4057745, at *12 (Del.Ch. Sept. 2, 2008) ("[T]he requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim."); *see also Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 515 (9th Cir. 1984) (one of the elements for piercing the corporate veil is that there be "a fraudulent intent behind the incorporation"). As described above, Plaintiff has not alleged facts demonstrating that TWM was created or structured for fraud or misuse. *See Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, No. 19760-NC, 2004 WL 415251, at *8 (Del. Ch. Mar. 4, 2004). Plaintiff's allegations are insufficient to pierce the corporate veil under the alter ego theory. Therefore, the Court cannot conclude that "the unchallenged facts constitute a legitimate cause of action" for Plaintiff's asserted claims.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Rule 55(b) Motion for Default Judgment (D.I. 7) is DENIED. Plaintiff may seek leave to file an amended pleading.[2] *See* Fed. R. Civ. 15(a)(2).

---

[2] Because the Clerk of Court's Entry of Default (D.I. 6) is premised on factual allegations from Plaintiff's Complaint (D.I. 1), the Court must vacate as moot the Clerk of Court's Entry of Default if Plaintiff files an Amended Complaint.

The Court will issue an Order consistent with this Memorandum Opinion.